FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 27, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

MICHAEL C.,[1]

               Plaintiff,

    v.

ANDREW M. SAUL, the Commissioner of Social Security,[2]

               Defendant.

No.    4:19-CV-05042-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

      Before the Court are the parties' cross summary-judgment motions. ECF Nos. 11 & 15. Plaintiff Michael C. appeals a denial of benefits by the Administrative Law Judge (ALJ). He alleges the ALJ improperly 1) discounted

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to him by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] Andrew M. Saul is the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R. Civ. P. 25(d).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

Plaintiff's symptom reports, 2) ignored lay testimony from Plaintiff's mother; 3) considered the medical opinions; 4) deemed Plaintiff's migraines non-severe; and 5) crafted the RFC. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 11, and denies Defendant's Motion for Summary Judgment, ECF No. 15.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. § 416.920(a).

[4] *Id.* § 416.920(a)(4)(i).

[5] *Id.* § 416.920(b).

[6] *Id.*

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

---

[7] 20 C.F.R. § 416.920(a)(4)(ii).

[8] *Id.* § 416.920(c).

[9] *Id.*

[10] *Id.* § 416.920(a)(4)(iii).

[11] *Id.* § 416.920(d).

[12] *Id.* § 416.920(a)(4)(iv).

[13] *Id.*

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—in light of the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

On February 19, 2014, Plaintiff filed a Title XVI supplemental security income application.[18] The claim was denied initially and upon reconsideration.[19] An

---

[14] 20 C.F.R. § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. § 416.920(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 20 & 162-67.

[19] AR 101-08 & 112-17.

administrative hearing was then held in 2016 after which the administrative law judge (ALJ) denied Plaintiff's claim.[20]

Plaintiff appealed the ALJ's denial to federal district court.[21] The parties agreed to a stipulated remand, which was accepted by the district court.[22] A second administrative hearing was held in 2018 before ALJ Caroline Siderius, who also denied the claim.[23]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity since February 19, 2014, the alleged onset date;[24]

- Step two: Plaintiff had the medically determinable severe impairment of familial adenomatous polyposis (FAP) (inherited genetic disorder characterized by growths/polyps in the colon);

[20] AR 17-78.

[21] AR 579-91.

[22] AR 587-93.

[23] AR 529-56.

[24] The application date is the beginning of the alleged period of disability.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform light work with the following limitations:

  The claimant can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, sit for up to 6 hours in an 8-hour day, and stand and/or walk for up to 6 hours in an 8-hour day. He can never climb ladders/ropes/scaffolds, and not work at unprotected heights. He can only occasionally crawl, stoop and kneel. He is limited to working in settings with only ordinary office level light and noise. Additionally, he would need to work near restroom facilities, and need to be able to use the facilities at will for normal restroom breaks.

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff was capable of performing work that existed in significant numbers in the national economy, such as mail room clerk, routing clerk, and café attendant.[25]

When assessing the medical-opinion evidence, the ALJ gave:

---

[25] AR 506-26.

- significant weight to the reviewing opinion of Howard Platter, M.D.; and

- some weight to the opinion of the testifying medical expert, Subramanian Krishnamurthi, M.D.[26]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[27]

Plaintiff timely appealed the ALJ's denial to this Court.[28]

### III. Standard of Review

A district court's review of the Commissioner's final decision is limited.[29] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[30] Substantial evidence is "more than a mere

---

[26] AR 517-19.

[27] AR 515.

[28] *See* 20 C.F.R. §§ 404.981 & 422.201.

[29] 42 U.S.C. § 405(g).

[30] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[31] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[32] The Court considers the entire record as a whole.[33]

Further, the Court may not reverse an ALJ decision due to a harmless error.[34] An error is harmless "where it is inconsequential to the [ALJ's] ultimate

---

[31] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[32] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[33] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[34] *Molina*, 674 F.3d at 1111.

nondisability determination."[35] The party appealing the ALJ's decision generally bears the burden of establishing harm.[36]

## IV.    Analysis

Plaintiff challenges the ALJ's denial of benefits on several grounds. A central focus of many of Plaintiff's arguments is whether the ALJ adequately incorporated into the RFC Plaintiff's need to use the bathroom often—and for an extended period—due to his bowel symptoms resulting from his j-pouch, which was created after his large intestine was largely removed as a preventative measure to reduce the chances that Plaintiff would develop cancer because of his FAP. As explained below, the Court finds the ALJ failed to adequately incorporate these needs into the RFC and that this error is consequential.

## A.    Plaintiff's Symptom Reports: The ALJ erred in discounting Plaintiff's symptoms reports.

Plaintiff argues the ALJ failed to provide valid reasons for rejecting his bowel-related symptoms. The Court agrees the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's 1) testimony that his loose watery stools require him to use the bathroom for ten minutes to a half-hour each time he

---

[35] *Id.* at 1115 (quotation and citation omitted).

[36] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

has a bowel movement and that he soils himself about once or twice a week, and 2) reports to treatment providers that he has loose stools two to four times a day.[37]

When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[38] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[39] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his bowel symptoms inconsistent with the imaging and laboratory studies, physical examinations and related treatment notes, conservative care, and Plaintiff's activities.[40]

---

[37] AR 291, 502, 538, & 540-45.

[38] *Molina*, 674 F.3d at 1112.

[39] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[40] AR 515-18.

While the consistency of Plaintiff's reported symptoms with the objective medical evidence is a factor for the ALJ to consider, here, the relied-on imaging and laboratory studies are not responsive to Plaintiff's reported frequent and time-consuming bowel symptoms resulting from his j-pouch, which was created after he had portions of his colon removed to reduce the likelihood that he would develop cancer from his FAP.[41] Regardless of whether the scopes, scans, and imaging after the j-pouch was created were largely normal, the testifying medical expert did not dispute that about sixteen percent of j-pouch patients struggle with high and potentially disabling bowel frequency.[42] In addition, Dr. Platter agreed that Plaintiff needed "to work in a setting which had adequate access to restroom facilities" due to his j-pouch reconstruction.[43] Therefore, that the imaging, scans, and studies were largely normal—absent his j-pouch—was not a clear and convincing reason to discount Plaintiff's reported bowel symptoms.[44] The ALJ

---

[41] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[42] AR 540-41.

[43] AR 96.

[44] *Cf. Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (recognizing that it is not legitimate to discount an opinion for a reason that is not responsive to the medical opinion).

failed to recognize that Plaintiff' j-pouch is itself a functional abnormality supported by imaging and laboratory studies, which affected Plaintiff's bowels.

That Plaintiff received conservative care, such as medications for nausea and headache pain, dietary supplements, and monitoring with gastroenterology studies and polyp removal, is also not a clear and convincing reason to discount Plaintiff's reported bowel symptoms. There is no evidence in the record that there was other treatment to alleviate Plaintiff's bowel symptoms resulting from j-pouch reconstruction. The ALJ could have questioned Dr. Krishnamurthi as to whether there was non-conservative treatment that could assist Plaintiff with his bowel symptoms. The ALJ did not, and the record does not provide any information as to non-conservative treatment options.[45] Therefore that Plaintiff received

_____

[45] Plaintiff's counsel during the 2018 administrative hearing stated that Plaintiff was recommended to drink Pediasure-type drinks but that Plaintiff was unable to afford them most of the time. Because the ALJ did not discount Plaintiff's symptoms on the basis of failure to follow prescribed treatment, the Court cannot affirm discounting Plaintiff's symptoms on this ground. *See Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). Moreover, the ALJ did not discuss whether this recommendation was prescribed, what impact it would have on Plaintiff's bowel symptoms, and whether Plaintiff's claimed inability to afford the Pediasure-type

conservative care for his permanent FAP condition and related j-pouch was not a

clear and convincing reason to discount his bowel symptoms.

Likewise, that the treatment notes indicated that Plaintiff's physical

examinations were largely normal—absent his j-pouch—is not a clear and

convincing reason to discount Plaintiff's reported bowel symptoms resulting from

his j-pouch and attendant diet. There is no medical evidence to rebut Plaintiff's

testimony that he suffered from frequent and urgent loose bowel movements

because of the installed j-pouch and related dietary changes to accommodate the j-

pouch. There is no medical evidence to dispute Plaintiff's testimony that he

selected a largely liquid diet in order to reduce the likelihood that he would have

solid bowels, which could cause an obstruction. There is also no medical evidence

that an individual who has a j-pouch and a largely liquid diet may experience loose

watery stools several times a day, requiring that individual to use the restroom

during "abnormal work breaks" when his j-pouch was full. While, as is discussed

more below, Dr. Krishnamurthi testified that "just because somebody has a

_____

drinks constituted an acceptable reason for not drinking the drinks. *See Orn*, 495

F.3d at 536-37 (requiring the ALJ to consider whether the claimant's reason for

failing to follow the prescribed treatment was an acceptable reason).

colectomy doesn't mean they have to go to the bathroom quite often,"[46] Dr. Krishnamurthi did not offer a clear opinion as to whether *this* Plaintiff experienced bowel symptoms that required a lengthier bathroom break.

In addition, there is no medical evidence that the installed j-pouch was expected to consistently cause abdominal pain or other abnormal physical examination findings, other than if he was constipated or experiencing complications from polyps. And the record is consistent with abdominal pain associated with polyps or post-surgery for polyps.[47] Therefore, that Plaintiff's treatment notes did not usually indicate abdominal pain or other abnormal physical examination findings is not a clear and convincing reason to discount Plaintiff's bowel symptoms.

In comparison, notes in the treatment records are largely consistent with Plaintiff's testimony about his bowel-symptoms. For instance, during a referral to have upper and lower scopes conducted, Plaintiff reported that he has "4 loose stools a day."[48] Also, during his yearly scope appointments, it was noted that Plaintiff reported he was experiencing "his usual state of GI health" and "some

---

[46] AR 538.

[47] AR 465-76, 485-501.

[48] AR 291.

intermittent loose stooling but states that this has not been progressive."[49] And another FAP treatment note indicates Plaintiff reported "being in his usual state of good GI health," including "2-3 loose movements per day which is typical for him."[50] While the number of daily loose bowel movements reported by Plaintiff fluctuated between 2-4, the treatment notes related to Plaintiff's FAP condition consistently indicate that Plaintiff reported loose bowel movements and there is no indication by the treatment providers that these loose bowel movements were inconsistent with FAP or a j-pouch. Therefore, that the treatment notes indicated that Plaintiff's physical examinations were otherwise largely normal is not a clear and convincing reason to discount Plaintiff's reported bowel symptoms resulting from his j-pouch and attendant diet.

Finally, the ALJ discounted Plaintiff's reported symptoms due to his activities.[51] While the ALJ may consider a claimant's activities that undermine reported symptoms,[52] here, the ALJ failed to adequately explain why Plaintiff's daily living activities, including managing his personal care and medications,

---

[49] AR 356.

[50] AR 502.

[51] AR 518.

[52] *See Rollins*, 261 F.3d at 857.

caring for his children, fixing his own meals daily, and completing various household chores such as dishes, vacuuming, sweeping, yard work/lawn mowing, and caring for pets, as well as playing video games, watching television, and getting out of the house to shop, attend medical appointments, and spend time with family, are inconsistent with his need to have ready access to a bathroom several times a day—or risk soiling himself. There is no evidence that before or during these activities Plaintiff does not have ready access to a bathroom for ten to thirty minutes or that he lacks adequate time to clean himself as needed.

In summary, Plaintiff established the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's reported bowel symptoms.[53] Moreover, this error is consequential. The RFC, which merely required that Plaintiff work near a restroom and to be able to use the restroom "at will for *normal* restroom breaks,"[54] does not adequately incorporate Plaintiff's reports that he must use the bathroom 3-4 times a day for 10 to 30 minutes each time and that he needs time to clean himself and his clothing when he has a weekly bowel accident.[55] The vocational expert testified that an individual

---

[53] *See Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998).

[54] AR 514 (emphasis added).

[55] *See Lingenfelter*, 504 F.3d at 1040.

is unemployable if he needs to use the bathroom for 80 cumulative minutes during a work day.[56] Resultantly, the step-five determination, which was based on an erroneous RFC, is not supported by substantial evidence.

**B.**   **Lay Testimony: The ALJ erroneously ignored Ms. Culver's testimony.**

Plaintiff contends the ALJ erred by ignoring Plaintiff's mother, Ardis Culver's testimony from the initial 2016 administrative hearing. Ms. Culver testified that she observed her son deal with bowel leakage and use the bathroom often.[57] The prior ALJ gave limited weight to Ms. Culver's testimony.[58] But the more recent ALJ did not mention Ms. Culver's testimony in her 2019 decision.[59]

Defendant contends the recent ALJ did not need to weigh Ms. Culver's testimony because the prior ALJ had and therefore the prior ALJ's weighing of Ms.

---

[56] AR 553-55.

[57] AR 61-64.

[58] AR 26.

[59] AR 509-21.

Culver's testimony was the law of the case on remand.[60] The Court disagrees with Defendant.

"Testimony by a lay witness provides an important source of information about a claimant's impairments, and an ALJ can reject it only by giving specific reasons germane to each witness."[61] The ALJ failed to do that here.

The prior remand was at the stipulated request of the parties.[62] The remand order required the ALJ to conduct a new hearing, further develop the record, and issue a new decision after reevaluating the medical evidence and reevaluating Plaintiff's credibility.[63] Because the prior ALJ's decision to discount Ms. Culver's testimony was dependent on that ALJ's weighing of the medical evidence, the ALJ on remand needed to reconsider Ms. Culver's testimony after reweighing the medical evidence. And during the second administrative hearing, the ALJ

---

[60] The doctrine of the law of the case "is concerned primarily with efficiency, and should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016).

[61] *Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th Cir. 1999).

[62] 4:17-cv-5179-EFS, ECF Nos. 19 & 20.

[63] 4:17-cv-5179-EFS, ECF No. 20.

recognized her need to hear all of the evidence and make an independent decision: "I was not the judge who heard the case in the first place and so this will be what we call a de novo hearing. It will be all new and I'll be hearing all the evidence for the first time and making an independent decision . . . ."[64] Yet, in her written opinion, the ALJ failed to reevaluate Ms. Culver's testimony or to 1) indicate whether she was adopting the prior ALJ's analysis and findings as to Ms. Culver's testimony or 2) include a new analysis as to Ms. Culver's testimony.

This error is consequential because Ms. Culver's testimony relates to Plaintiff's leakage experiences and need to use the bathroom often. A key issue on remand.

## C.    Medical Opinions: The ALJ's analysis is not supported by substantial evidence.

Plaintiff challenges the ALJ's consideration of the opinion of Dr. Krishnamurthi, the testifying medical expert. The opinion of a nonexamining physician serves as substantial evidence if it is supported by other independent evidence in the record.[65] The Court finds the ALJ's interpretation of Dr. Krishnamurthi's opinion is not supported by substantial evidence.

_____

[64] AR 532.

[65] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

As to Dr. Krishnamurthi, the ALJ stated:

Dr. Krishnamurthi further testified that while the medical record indicates claimant has had chronic abdominal pain, he did not see evidence documenting claimant having frequent bowel movements throughout the day. For example, Dr. Krishnamurthi referenced a treating provider record in August 2015 noting claimant had good gastrointestinal health, reported having two to three bowel movements a day without abdominal pain, taking Imitrex for headaches and another medication (Zofran) for nausea as needed. The doctor further testified that he would not necessarily expect that patients who had undergone surgery for colon removal/resection to have disabling bowel urgency/frequency.

With respect to claimant's functional limitations, Dr. Krishnamurthi concluded that claimant could perform light work involving lifting 20 pounds occasionally and 10 pounds frequently, standing/walking 6 hours in an 8-hour day, and sitting without limitations. The doctor further assessed that claimant could not climb ladders/ropes/scaffolds but could occasionally balance, stoop, kneel, crouch and crawl. In addition, Dr. Krishnamurthi advised that claimant should have ready access to restroom facilities and permitted to take reasonable breaks to use the restroom. However, Dr. Krishnamurthi indicated that the medical record does not support claimant's allegations that he would need [to] use the toilet for 10 to 30 minutes at each restroom break.

Dr. Krishnamurthi's testimony and the overall medical record support the residual functional capacity assessment set forth in this decision, finding the claimant capable of work at a limited range of light exertion subject to postural, workplace environmental/hazard and restroom facility access limitations.
. . . .

As a board-certified internal medicine physician, Dr. Krishnamurthi has specialized expertise relevant to claimant's impairments, as well as knowledge of Social Security disability program regulations. Furthermore, he is the only medical consultant to have the opportunity to review the entire longitudinal medical record and be subject to cross-examination at the hearing. Moreover, Dr. Krishnamurthi's opinion is

based on the objective medical evidence of record, which he supported with detailed testimony and reasonable explanation.[66]

The ALJ's findings are not supported by the record, particularly by Dr. Krishnamurthi's own testimony, which was choppy and ultimately unclear, as he appeared to change his initial opinion. First, although Dr. Krishnamurthi is board certified in internal medicine and practices internal medicine and cardiology, he testified in response to the question of whether he has treated anyone with FAP:

> Well, I think I probably have. Okay. I follow them. I do not. I'm not -- I have one of those patients and they're -- the total colon, the total colectomy. But I do not -- I did not see though -- I don't find that the frequent bowel movements. I do not see that. Of course, I might have missed them.[67]

Based on this choppy testimony, it is unclear whether Dr. Krishnamurthi has much experience with treating patients with a j-pouch, and whether he has knowledge about whether such patients have frequent or urgent loose stools, which required additional time in the bathroom.

Second, unlike as found by the ALJ, Dr. Krishnamurthi's testimony is neither detailed nor supported with a reasonable explanation. As mentioned in the above-quoted testimony and relied on by Defendant (and the ALJ), Dr. Krishnamurthi first testified that he did not see mention of frequent bowel

---

[66] AR 517 (internal citations to the AR omitted).

[67] AR 539.

movements in the medical record, although he mentioned that he might have missed reference to them.[68] Then, later Dr. Krishnamurthi stated:

> No. I did not see in the record [that Plaintiff would need to be in the bathroom for ten minutes to half an hour each time he went the bathroom] really that some of the -- that's my fault. . . I looked at the binder. Frequent -- bathroom -- I see in the records.
>
> . . . .
>
> That's there, judge. . . . What I saw in the E -- that's page one. I saw B1-E. GIF. He has two to three loose movements a day and it is difficult for him. That's one thing, I saw that. And then, he denied that he bled blood or a form of pain or significance. Separate days it is twice irritable. So that's the only thing that I saw. I read if he had been here for one year -- I could see this for ten years -- polyposis. So, they've got memories from 2008 to 2015. So, I'd also -- looking at the treating medications they were not giving him that current break period. That's three extra breaks. Then, there's no time for one. Maybe, notes here? And let me. And then let me see. Breaks are not normal and -- .[69]

Dr. Krishnamurthi's testimony about Plaintiff's bowel symptoms is choppy and unclear—not detailed or reasonably explained. It is possible that Dr. Krishnamurthi ultimately opined—as Plaintiff argues—that Plaintiff has a need to use the restroom beyond normal work breaks. But rather than continue to cross-examine Dr. Krishnamurthi and clarify his opinion, the ALJ ceased questioning Dr. Krishnamurthi at this point.

---

[68] AR 539.

[69] AR 540-42.

Therefore, on this record, the ALJ's finding that Dr. Krishnamurthi's opinion supports the RFC, which only requires that Plaintiff "work near restroom facilities" and "be able to use the facilities at will for normal restroom breaks" is not supported by substantial evidence.[70]

**D.    Other Issues: Migraine-related issues need not be addressed.**

Plaintiff also argues that the ALJ failed to fully consider Plaintiff's migraine symptoms and related medical testimony, including that of Dr. Platter, as well as erroneously found that Plaintiff's migraines were non-severe. Because the Court finds the ALJ consequentially erred in weighing the medical evidence and Plaintiff and Ms. Culver's testimony as to Plaintiff's bowel symptoms, the Court need not address Plaintiff's remaining arguments.

**E.    Remand: A remand for award of benefits is appropriate.**

Where, as here, the Court finds that the ALJ improperly discounted Plaintiff's symptom reports, ignored lay testimony, and misweighed medical testimony, the Court has discretion as to whether to remand for further proceedings or for benefits.[71] Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is

---

[70] AR 514.

[71] *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000).

appropriate under the so-called "credit-as-true" rule to exercise this discretion to direct an immediate award of benefits.[72]

Under this credit-as-true framework, the Court must apply the following three-part standard, each part of which must be satisfied before the Court remands to the ALJ with instructions to award benefits: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."[73]

Here, the Commissioner has had two opportunities to develop the record and conduct administrative hearings, during the second of which the ALJ had the opportunity to take testimony from a medical expert. Yet, the second ALJ still failed to provide legally sufficient reasons for discounting Plaintiff's testimony, ignored Ms. Culver's testimony, and misweighed the medical evidence. By doing so, the ALJ crafted an RFC that permitted light work near restroom facilities with at-

---

[72] *Id.* at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").

[73] *Garrison*, 795 F.3d at 1020.

will access "for normal restroom breaks."[74] This RFC fails to account for Plaintiff's reported need to use the restroom beyond the time needed daily for "normal restroom breaks" and weekly need to clean himself after he soils himself and his clothing.[75] The vocational expert testified that a worker was employable if they needed to take one to two additional restroom breaks beyond normal restroom breaks, but that there were no jobs in the economy for an individual, such as

---

[74] AR 514.

[75] *See Sikorski v. Berryhill*, 690 Fed. App'x 429, 433 (7th Cir. July 7, 2017) (finding that the ALJ erred by making no finding regarding the required length of the claimant's bathroom visits); *Sanford v. Colvin*, No. CV 13-06333-JEM, 2014 WL 1660076 at *7(C.D. Cal. April 25, 2014) (unpublished opinion) (finding that the ALJ erroneously discounted the claimant's reported bowel symptoms based on the testifying medical expert's generalized testimony about patients who use a colostomy bag, rather than a specific opinion as to the claimant's use of her colostomy bag); *Hamblen v. Colvin*, No. 3:12-cv-2009-BH, 2013 WL 4858750, *13 (N.D. Texas, Sept. 12, 2013) (unpublished opinion) (finding the ALJ erred to incorporate any limitations as to the claimant's need for time to clean up after an incontinence incident into the RFC).

Plaintiff, who took four unscheduled twenty-minute breaks per workday.[76]

Accordingly, if the Plaintiff's testimony is credited as true, he is unemployable due to his bowel frequency, duration, and urgency.

The Court finds that this is a rare circumstance that requires remand for an immediate award of benefits. This matter has already been remanded on one prior occasion due to the Commissioner's failure to fully consider the evidence and craft an adequate RFC. Squarely before the ALJ on remand was to what extent Plaintiff's FAP (j-pouch) limited his ability to work given his loose bowel movements. The ALJ ceased questioning Dr. Krishnamurthi when he appeared to be offering testimony that Plaintiff required restroom breaks beyond "normal restroom breaks," did not inquire with Dr. Krishnamurthi as to whether there were medical treatments that would reduce Plaintiff's bowel symptoms, and did not consider or weigh Ms. Culver's testimony that Plaintiff suffered bowel leakage.

Therefore, the Court finds it appropriate to credit-as-true Plaintiff's testimony. When Plaintiff's bowel symptoms are fully credited, the vocational expert's testimony requires a finding that Plaintiff is disabled. Moreover, the Court

---

[76] AR 553-55.

finds this record supports applying the credit-as-true rule as a prophylactic

measure on this record.[77]

### V. Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.     Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is

    **GRANTED.**

2.     The Commissioner's Motion for Summary Judgment, **ECF No. 15**, is

    **DENIED**.

3.     The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff

    REVERSING and REMANDING the matter to the Commissioner of

    Social Security for immediate calculation and award of benefits.

4.     The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order,

provide copies to all counsel, and close the file.

**DATED** this 27th  day of December 2019.


_____s/Edward F. Shea_____
EDWARD F. SHEA
Senior United States District Judge


_____

[77] _See Vasquez v. Astrue_, 572 F.3d 586, 593-94 (9th Cir. 2009).